IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RENEE SINGLETON and DAYAIRA CEDANO, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>CLEAN RITE CENTERS, LLC,<br><br>        Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Renee Singleton and Dayaira Cedano ("Plaintiff"), by and through their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge, against Defendant Clean Rite Centers, LLC ("Clean Rite" or "Defendant").

## NATURE OF THE ACTION

1. Defendant provides reloadable cash cards ("Laundry Cards") designed for use in laundry machines that are also provided by and serviced by Defendant.

2. This case seeks redress for Defendant's practice of misrepresenting the value of these Laundry Cards.

3. These Laundry Cards can be purchased and refilled at Clean Rite Card Stations.

4. Defendant's Laundry Cards include unfair and deceptive conditions that are only revealed to customers after the point of sale, or never revealed at all.

5. A new Laundry Card can be purchased from a Laundry Card Station for $3.

6. To fill the Laundry Card, users can use either cash or credit card but are not able to use coins.

7. When using a credit card, users can only add money in certain increments.

8. The Laundry Cards can be filled with up to $80 at a time.

9. Defendant charges various fees for different size washer and dryers. These numbers are subject to change at Defendant's whim.

10. Neither $80 nor the increments that can be added to the Laundry Cards are divisible by the laundry fees.

11. The implication of the possible prepayment amounts in conjunction with the price of laundry means that it is essentially guaranteed that the balance of a laundry card will never reach zero.

12. Defendant's Laundry Cards are non-refundable.

13. Clean Rite does not reveal the non-refundability of these remainder balances until after a customer has already committed to purchasing a Laundry Card.

14. The possible refill amounts are not random. They are calculated to always produce a remainder which Defendant then keeps.

15. These remaining balances are thus unavailable to Laundry Card users and function as a hidden fee that is not disclosed to users.

16. This refund policy, in conjunction with Defendant's policies that result in users occasionally needing to purchase new cards cause Clean Rite customers to accumulate countless Laundry Cards with balances that are all inaccessible.

17. Even after the point of sale, Defendant does not reveal that the combination of its policies, the possible refill amounts, and the price of the laundry leads to inaccessible remainder balances on the Laundry Cards.

18. Thus, the policies that produce these balances that Defendant keeps are not disclosed to customers clearly and conspicuously.

19. New York's General Business Law § 396-i(1) defines a "gift certificate" as an:

> [E]lectronic payment device that: (i) is usable at a single merchant or an affiliated group of merchants that share the same name, mark, or logo, or is usable at multiple, unaffiliated merchants or service providers; and (ii) is issued in a specified amount; and (iii) may or may not be increased in value or reloaded; and (iv) is purchased and/or loaded on a prepaid basis for the future purchase or delivery of any goods or services; and (v) is honored upon presentation.

20. New York's General Business Law § 396-i(c)(3) requires that:

> The terms and conditions of a gift certificate store credit shall be clearly and conspicuously stated thereon. Terms and conditions shall include … whether any fees are assessed against the balance of the gift certificate, and whether a fee will be charged for the replacement of a gift certificate that is lost, stolen, or destroyed, if any. Additional terms and conditions including, but not limited to, policies related to refunds … shall be conspicuously printed: (a) on the gift certificate; or (b) on an envelope or packaging containing the gift certificate, provided that a toll free telephone number to access the additional terms and conditions is printed on the gift certificate; or (c) on an accompanying document, provided that a toll free telephone number to access the additional terms and conditions is printed on the gift certificate.

21. New York's General Business Law § 396-i(5-b) requires that:

> A gift certificate, other than an open loop gift certificate or a promotional gift certificate, with a remaining value of less than five dollars may be redeemed upon request for its cash value.

22. Laundry Cards are a gift certificate within the meaning of New York General Business Law § 396-i(1).

23. In direct violation of New York state law, Defendant's policies related to remainder balances of Laundry Cards are not "conspicuously printed: (a) on the gift certificate; or (b) on an envelope or packaging containing the gift certificate, provided that a toll free telephone number to access the additional terms and conditions is printed on the gift certificate; or (c) on an accompanying document, provided that a toll free telephone number to access the additional terms and conditions is printed on the gift certificate." N.Y. G.B.L. § 396-i(c)(3).

3

24. Similarly, Defendant's Laundry Cards "with a remaining value of less than five dollars" are not able to be "redeemed upon request for its cash value." N.Y. G.B.L. § 396-i(5-b).

25. 12 C.F.R. § 1005.20(d)(2) states that:

> No person may impose a dormancy, inactivity, or service fee with respect to a gift certificate, store gift card, or general-use prepaid card, unless: (1) There has been no activity with respect to the certificate or card, in the one-year period ending on the date on which the fee is imposed; (2) The following are stated, as applicable, clearly and conspicuously on the gift certificate, store gift card, or general-use prepaid card: (i) The amount of any dormancy, inactivity, or service fee that may be charged; (ii) How often such fee may be assessed; and (iii) That such fee may be assessed for inactivity; and (3) Not more than one dormancy, inactivity, or service fee is imposed in any given calendar month.

26. Additionally, 12 C.F.R. § 1005.20(c)(3) requires that:

> Before a gift certificate, store gift card, or general-use prepaid card is purchased, a person that issues or sells such certificate or card must disclose to the consumer the information required by paragraphs (d)(2), (e)(3), and (f)(1) of this section. The fees and terms and conditions of expiration that are required to be disclosed prior to purchase may not be changed after purchase.

27. 12 C.F.R. § 1005.20(a)(2) states that a:

> Store gift card means a card, code, or other device that is: (i) Issued on a prepaid basis primarily for personal, family, or household purposes to a consumer in a specified amount, whether or not that amount may be increased or reloaded, in exchange for payment; and (ii) Redeemable upon presentation at a single merchant or an affiliated group of merchants for goods or services.

28. 12 C.F.R. § 1005.20(a)(6) states that:

> The term "service fee" means a periodic fee for holding or use of a gift certificate, store gift card, or general-use prepaid card. A periodic fee includes any fee that may be imposed on a gift certificate, store gift card, or general-use prepaid card from time to time for holding or using the certificate or card.

29. According to the official interpretation of this regulation from the Consumer Financial Protection Bureau (the "CFPB") a:

> Periodic fee includes any fee that may be imposed on a … store gift card … from time to time for holding or using the certificate or card… a transaction fee … [or] a reload fee … whether or not the fee is waived for a certain period of time or is only imposed after a certain period of time.[1]

30. A reloadable card from 12 C.F.R. § 1005.20(a)(2) falls within this regulation if it is "marketed or labeled as a gift card or gift certificate." 12 C.F.R. § 1005.20(b)(2).

31. According to the CFPB:

> Examples of marketed or labeled as a gift card or gift certificate include: A. Using the word "gift" or "present" on a card, certificate, or accompanying material, including documentation, packaging and promotional displays. B. Representing or suggesting that a certificate or card can be given to another person, for example, as a "token of appreciation" or a "stocking stuffer," or displaying a congratulatory message on the card, certificate or accompanying material. C. Incorporating gift-giving or celebratory imagery or motifs, such as a bow, ribbon, wrapped present, candle, or congratulatory message, on a card, certificate, accompanying documentation, or promotional material.[2]

32. Defendant advertises the Laundry Cards as a "gift" and a "great stocking stuffer":[3] [4]



---

[1] https://www.consumerfinance.gov/rules-policy/regulations/1005/interp-20/#20-a-6-Interp (Comment 20(a)(6)-1) (last accessed 9/10/2024)

[2] *Id.* (Comment 20(b)(2)-3.i.A)

[3] https://www.facebook.com/story.php?story_fbid=2317656108397328&id=224291831067110 (last accessed 9/10/2024)

[4] https://www.instagram.com/cleanritecenter/p/CmKJxhGPChJ/?hl=am-et (last accessed 9/10/2024)



33. In direct violation of federal law, Defendant's policies related to Laundry Cards lead to remainder balances that constitute service fees that are not clearly and conspicuously described on the store gift card. Each time money is added to the Laundry Card, a remainder balance is generated that constitutes a periodic fee. The amount of this fee is not disclosed prior to purchase or at any other point.

34. Defendant's advertisements claim that "Clean Rite Center focuses on providing customers with superior service from one laundry cycle to the next."[5]

35. However, despite these assertions, social media is replete with complaints about the Defendant's practices that appear on this complaint. For example, on Yelp.com, "Mike P." stated:

> [Y]ou have to buy a credit card thing and they will not refund any extra money you have on the card. [6]

---

[5] https://www.cleanritecenter.com/ (last accessed 9/5/2024)
[6] https://www.yelp.com/biz/clean-rite-center-brooklyn-4?start=20 (last accessed 9/5/2024)

36. These small balances add up. Defendant has distributed millions of these cards to Laundry Card users throughout the United States. Thus, Defendant has acquired at least millions of dollars in revenue to which they are not entitled.

37. Plaintiffs are Laundry Card Users who assert claims on behalf of themselves and similarly situated Laundry Card Users for unjust enrichment and violations of New York Gen. Bus. Law §§ 349 and 350.

## PARTIES

38. Plaintiff Renee Singleton is a citizen of New York who resides in Brooklyn, NY. Plaintiff Singleton possesses a Laundry Card that contains a balance of less than $5. The balance on her Laundry Card will never be able to reach zero by using Defendant's washing machines. Plaintiff Singleton was not aware of Defendant's unfair and deceptive policies before she purchased the Laundry Card.

39. Plaintiff Singleton owns a Laundry Card that she purchased in or around June 2024. She last refilled a Laundry Card in or around August 2024 at one of Defendant's stores located at 3720 Nostrand Ave, Brooklyn, NY 11235.

40. Plaintiff Dayaira Cedano is a citizen of New York who resides in Bronx, NY. Plaintiff Cedano possesses a Laundry Card that contains a balance of less than $5. The balance on her Laundry Card will never be able to reach zero by using Defendant's washing machines. Plaintiff Cedano was not aware of Defendant's unfair and deceptive policies before she purchased the Laundry Card.

41. Plaintiff Cedano owns a Laundry Card that she purchased in or around June 2022. She last refilled a Laundry Card in or around September 2024 at one of Defendant's stores located at 1968 Jerome Ave, Bronx, NY 10453.

42. Defendant Clean Rite Centers, LLC is a New York limited liability company with

its principal place of business at 97-77 Queens Boulevard, Suite 620, Rego Park, New York 11374. Defendant Clean Rite Centers, LLC operates laundromats throughout the United States.

## JURISDICTION AND VENUE

43. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

44. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under a law of the United States (the Electronic Fund Transfers Act, 15 U.S.C. § 1693, *et seq*. (the "EFTA") ). This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because these claims are so related to Plaintiffs' claim under the EFTA that they form part of the same case or controversy under Article III of the United States Constitution.

45. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant maintains its principal place of business in this district and a substantial portion of the events that gave rise to this cause of action occurred here.

46. This court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this district.

## CLASS REPRESENTATION ALLEGATIONS

47. Plaintiffs seek to represent a class defined as all Class members who reside in the United States who possess Laundry Cards that are maintained by Defendant (the "Class").

48. Plaintiffs also seek to represent a class defined as all Class members who reside in New York who possess Laundry Cards that are maintained by Defendant (the "New York Subclass") (collectively with the Class, the "Classes").

49. Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in the hundreds of thousands. The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

50. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to whether Defendant's Laundry Card refund policies are false and misleading.

51. The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs were exposed to Defendant's false and misleading marketing and promotional materials and representations, possesses Laundry Cards, and suffered a loss as a result of Defendant's possible prepayment amount and refund policies.

52. Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

53. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the

resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### Deceptive Acts Or Practices, New York Gen. Bus. Law § 349

54. Plaintiffs incorporates by reference and re-allege each and every allegation set forth above as though fully set forth herein.

55. Plaintiffs bring this claim individually and on behalf of members of the New York Subclass against Defendant.

56. By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making false representations in the marketing of Defendant's Laundry Cards.

57. The foregoing deceptive acts and practices were directed at consumers.

58. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the policy of structuring the possible prepayment amount and refund policies in a way as to maximize the balance of the Laundry Cards and increase Defendant's revenue.

59. Defendant's conduct is also misleading in a material way because it fails to comport with New York's General Business Law § 396-i(c)(3), in that Defendant does not clearly and conspicuously disclose Defendant's deceptive and unfair policies as described above.

60. Defendants' conduct is also misleading in a material way because it fails to comport with New York's General Business Law § 396-i(5-b), in that Defendants' policies to not allow Laundry Cards with a remaining value of less than five dollars to be redeemed upon request for its cash value.

61. Plaintiffs and members of the New York Subclass were injured as a result because they (a) spent money to fill up their Laundry Card, (b) were charged a hidden fee in the form of a balance that was essentially impossible to access, and (c) have a remainder balance on their Laundry Card that they would like to redeem for cash but which they are unable to because of Defendant's policies.

62. On behalf of themselves and other members of the New York Subclass, Plaintiffs seek to enjoin the unlawful acts and practices described herein, to recover actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT II
### Violation of the New York General Business Law § 350
### (On behalf of the New York Subclass)

63. Plaintiffs incorporate by reference and re-alleges herein all paragraphs alleged above.

64. Plaintiffs bring this claim individually and on behalf of the members of the New York Subclass against Defendant.

65. GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

66. Defendant's conduct regarding the Laundry Cards was false and misleading in a

material way because Defendant fundamentally misrepresents the policy of structuring the possible prepayment amount and refund policies in a way as to maximize the balance of the Laundry Cards and increase Defendant's revenue.

67. Defendant's conduct is also misleading in a material way because it fails to comport with New York's General Business Law § 396-i(c)(3), in that Defendant does not clearly and conspicuously disclose Defendant's deceptive and unfair policies as described above.

68. Defendants' conduct is also misleading in a material way because it fails to comport with New York's General Business Law § 396-i(5-b), in that Defendants' policies to not allow Laundry Cards with a remaining value of less than five dollars to be redeemed upon request for its cash value.

69. Plaintiffs and reasonable consumers were not made aware of Defendant's policies.

70. This misrepresentation was consumer-oriented and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

71. This misrepresentation has resulted in consumer injury or harm to the public interest.

72. As a result of this misrepresentation, Plaintiffs and members of the New York Subclass were injured because they (a) spent money to fill up their Laundry Card, (b) were charged a hidden fee in the form of a balance that was essentially impossible to access, and (c) have a remainder balance on their Laundry Card that they would like to redeem for cash but which they are unable to because of Defendant's policies.

73. By reason of the foregoing and as a result of Defendant's conduct, Plaintiffs and New York Subclass members seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual

damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 350.

## COUNT III
## Fraudulent Omission

74. Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

75. Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

76. This claim is based on fraudulent omissions concerning the Laundry Card policies at issue. As discussed above, Defendant failed to disclose its policy of that led to unusable Laundry Card remainder balances which Defendant unlawfully retains.

77. The false and misleading omissions were made with knowledge of their falsehood.

78. The false and misleading omissions were made by Defendant, upon which Plaintiffs and members of the proposed Classes reasonably and justifiably relied, and were intended to induce and actually induced Plaintiffs and members of the Classes to purchase Laundry Cards that they otherwise would not have or at least pay substantially more for the Laundry Cards than they otherwise would have.

79. The fraudulent actions of Defendant caused damage to Plaintiffs and members of the proposed Classes, who are entitled to damages and punitive damages.

## Count IV
## Violation of The Electronic Fund Transfers Act, 15 U.S.C. § 1693 et seq.
## (On Behalf of the Classes)

80. Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

81. Plaintiffs bring this claim individually and on behalf of the members of the

proposed Classes against Defendant.

82. The primary objective of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 is to protect consumer rights by providing a basic framework establishing the rights, liabilities, and responsibilities of participants in the electronic fund and remittance transfer systems. Plaintiffs and members of the Classes are "consumers" under 15 U.S.C. § 1693a(6).

83. Defendant is a financial institution as defined by 15 U.S.C. § 1693(a)(9), and 12 C.F.R. § 1005.2(a)(2)(i), because they directly or indirectly hold accounts belonging to consumers and/or they issue an access device to consumers.

84. Defendant's Laundry Cards are accounts pursuant to 15 U.S.C. § 1693(a)(2) and 12 C.F.R. § 1005.3.

85. Defendant's Laundry Cards are store gift cards pursuant to 15 U.S.C. § 16931-1(2), and 12 C.F.R. § 1005.20, because they are issued to consumers for personal, family, or household purposes and are redeemable at a single merchant or an affiliated group of merchants that share the same name, mark, or logo.  Defendant advertises the Laundry Cards as a "gift" and a "great stocking stuffer."

86. Defendant markets the Laundry Cards to the general public by promoting the cards  on the internet and Facebook.

87. Defendants violated 15 U.S.C. § 16931-1 and 12 C.F.R. § 1005.20 by charging service fees in the form of remainder balances that are not clearly and conspicuously described on the store gift card.  Each time money is added to the Laundry Card, a remainder balance is generated that constitutes a fee.  The amount of this fee is not disclosed prior to purchase or at any other point.

88. Defendant's violations of the EFTA have caused and continue to cause injury to Plaintiffs and Class members.

89. Plaintiffs and Class members are entitled to their actual and statutory damages, as well as reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1693m(a)(3).

## **RELIEF DEMANDED**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a. For an order certifying the Class and New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and New York Subclass and Plaintiffs' attorneys as Class Counsel to represent the Class members;

b. For an order declaring that Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

d. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

h. For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all claims so triable.

Dated: September 13, 2024

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   */s/ Philip L. Fraietta*
        Philip L. Fraietta

Philip L. Fraietta
Julian C. Diamond
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163

        E-Mail: pfraietta@bursor.com
            jdiamond@bursor.com

*Attorneys for Plaintiff*